**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**STEVEN MICHAEL KNIGHT**                                               **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO. 2:22-cv-00132-TBM-RPM**

**SHERIFF MITCH NOBLES, et al.**                                       **DEFENDANTS**

### REPORT AND RECOMMENDATION

*Pro se* Plaintiff Steven Michael Knight filed this civil action on September 29, 2022, alleging that Defendants (1) Sheriff Mitch Nobles, (2) Danny Merritt, (3) Allen Crocker, (4) Adam Lawrence Worbington, (5) Jerry Gardner, and (6) Jerry Elliott, in their individual and official capacities, violated his constitutional rights under 42 U.S.C. § 1983. [1] at 1; [56] at 1-6. When Plaintiff filed his Complaint, he was an inmate housed at the Forrest County Adult Detention Center ("FCADC") in Hattiesburg, Mississippi, [1] at 1, but he now resides at the East Mississippi Correctional Facility in Meridian, Mississippi, [102] at 1. Plaintiff is proceeding *in forma pauperis*.

Before the Court is the Motion [91] for Summary Judgment filed by Defendants Nobles, Merritt, Crocker, and Elliott. Plaintiff has not filed a summary-judgment motion or response, but he has filed two Statements of Undisputed Facts [79] [82] with documentary evidence for the Court's consideration. For the following reasons, the undersigned recommends that Defendants' Motion [91] for Summary Judgment be granted in part and denied in part. Plaintiff's official-capacity claims against all Defendants, his excessive-force claims against all Defendants, his failure-to-protect claim against Crocker, and his medical-care claims against all Defendants should be dismissed with prejudice. Plaintiff's claims against Gardner should be dismissed with prejudice too. Plaintiff's failure-to-protect claims against Nobles, Merritt, and Elliott in their individual capacities should be allowed to proceed, along with any claims against Worbington.

# I. BACKGROUND

## A. Plaintiff's Allegations

The following narrative is based on Plaintiff's pleadings and his testimony at the Omnibus Hearing. It is "recounted, as [it] must be at summary judgment, in the light most favorable to [Plaintiff]." *See Boyd v. McNamara*, 74 F.4th 662, 663 (5th Cir. 2023). "In other words, the story that follows is one-sided because the posture of the case requires it to be." *Id.* (quotation omitted).

On August 22, 2022, Plaintiff was arrested at his parents' house in Petal, Mississippi, by officers of the Perry County Sheriff's Department—including Nobles, Merritt, and Crocker. [1] at 4; [13] at 1; [91-2] at 7, 26. As officers approached the home, Plaintiff testified that he was "squatted down beside" his father (who cannot walk) to "[tell his] dad that [he] loved him." [91-2] at 34. Plaintiff testified that he knew he was "fixing to go to prison" and that he might not "get out this time." *Id.* 33-34. "[W]hen the back door came open," Plaintiff says that he "laid down, put [his] face in the carpet, [and] put [his] hands behind [his] head." *Id.* at 34.

Plaintiff claims that officers used "excessive force" from the start of the arrest, though he was "laying with [his] hands behind [his] head." [13] at 2. Specifically, Plaintiff testified that "six or seven officers . . . jump[ed] on [him] . . . and broke three of [his] ribs." [91-2] at 19. Plaintiff could not see his assailants because he was lying prone on the floor, but he recognized the officers' voices from past experiences. *See* [91-2] at 34-35, 49. After he was restrained and placed in the back of the patrol car, Plaintiff claims that Merritt opened the door and struck Plaintiff in the abdominal area with a taser "for multiple seconds," though he was "showing no aggression whatsoever." [13] at 2-3. Plaintiff claims that Merritt tazed him "in a rage" after Plaintiff denied knowing the location of certain drugs. [11-1] at 1.

2

Plaintiff was then transported to the Perry County Jail and placed in a holding cell. [1] at 4. Some time later, he claims that Merritt and Elliott[1] entered his cell with an inmate named Worbington,[2] who assaulted him while Merritt and Elliott watched. *Id*. Allegedly, Worbington "repeatedly hit [Plaintiff] with a close[d] fist" about 25 to 30 times. [56] at 3. Plaintiff testified that Merritt and Elliott "bribed" Worbington to assault him, [13] at 3, and "[t]hey did not even try to break . . . up" the fight, [91-2] at 26.

Plaintiff was then moved to another holding cell, where Elliott sprayed him with mace. [1] at 4. Plaintiff does not explain why he was maced. He simply claims that he was locked inside that cell—with mace in the air—for more than two hours. [11-2] at 1. The air was so thick, Plaintiff "had [his] face in the crack of the door, . . . trying to catch any air [he] could." [91-2] at 31. Eventually, his custodians returned and escorted him outside, where they placed him "on [his] knees on concrete with nothing but some boxers on" and sprayed him in the face with the water hose. *Id*. at 31-32. During this time, Nobles, Crocker, Merritt, and Worbington "all laughed and called [Plaintiff] names." [56] at 3.

Plaintiff also claims that "Perry County Jail's medical staff denied . . . treatment" for his injuries. [12] at 1. Though he saw a nurse at the Perry County Jail, she merely provided Tylenol "and told [him] nothing was wrong." [56] at 4; *see also* [91-2] at 37. Plaintiff was transferred to FCADC on August 25, 2022. [1] at 4. Only then was Plaintiff evaluated at Forrest General Hospital, and medical staff there confirmed that he suffered "fractured [and] cracked" ribs, *id*., and

---

[1].*See infra* Section IV(D).

[2] Worbington was served with process by the United States Marshals Service at the Perry County Jail on December 19, 2022. [29] at 1. He has not answered or otherwise appeared to defend Plaintiff's allegations against him, and Plaintiff has not moved for default judgment.

a concussion, [91-2] at 38-39. His injuries were treated with medication, including ibuprofen, Wellbutrin, Seroquel, and a blood-pressure medication. *Id*. at 39. Plaintiff claims that the tasing incident caused him to suffer high blood pressure, which must now be "checked daily" and treated with "daily medication." [1] at 4.

Plaintiff claims that he submitted grievances to Nobles about these incidents, [11] at 1, asking that Merritt and Elliott be "relieved of duty" and that Worbington be "charged . . . [with] assault," [11-1] at 1; [11-2] at 1. Nobles did not punish either officer or the inmate—who was not even "relieved from trustee" status. [11] at 1. Thus, Plaintiff believes that Nobles, along with Jail Administrator Crocker, "condoned" these alleged constitutional violations. [6] at 1; [13] at 1-2.

Plaintiff requests $35,000,000.00 in damages, [56] at 6, and that "each Defendant [be] removed from duty," [1] at 5. He also asks that criminal charges be brought against each Defendant. *Id*.

**B. Summary-Judgment Evidence**

The following counternarrative is based on evidence submitted by both parties. Shortly before Plaintiff was arrested, his sister "advised [officers that Plaintiff] was holding her father hostage with a shotgun." [91-1] at 3 (Williams Incident Rep.); *see also* [79-1] at 35 (Perry County Sheriff's Office Incident Rep.). When they arrived at the home, officers "observed a white male subject shut the front door." [91-1] at 3 (Williams Incident Rep.). Though he "was advised to exit the residence with his hands up," Plaintiff "refused to exit the house." *Id*.

Officers eventually decided "to breach the back door and enter the residence due to the severity of the call." *Id*. Once the door was open, officers "used loud verbal orders for [Plaintiff] to exit the residence," but he did not comply. [91-4] at 1 (Merritt Incident Rep.). Once inside the

home, officers ordered Plaintiff "to get on the ground." *Id*. Plaintiff resisted their efforts to place him in handcuffs, "and he continued to be combative all the way to the patrol vehicle." *Id*. When he refused to "get into the vehicle," Merritt "placed [his] Phazzer into [Plaintiff's] belly and dry stunned" him. *Id.* "[Plaintiff] then complied." *Id*.

After these events, Plaintiff was charged with and pled guilty to resisting arrest, disorderly conduct, and simple assault. [91-3] at 1-3 (Justice Court Records). Plaintiff's father advised the officers that "his son pointed a gun in his direction and threatened his life," which placed him "in fear for his life during the incident." [91-1] at 3 (Williams Incident Rep.). Likewise, when Merritt arrived at the Perry County Jail to "[assist] with the booking process," Plaintiff "told [him] that when he got out of jail, he would kill [Merritt]." [91-4] at 1 (Merritt Incident Rep.).

The next day, Plaintiff created a disturbance in the booking area by "yelling, kicking the holding cell door and cursing at [Elliott]," the jailer. [79-1] at 45 (Elliott Incident Rep.). When he could not deescalate the situation, Elliott "requested a deputy to come to the jail." *Id*. Merritt soon arrived and observed Plaintiff "cursing . . . [Elliott] and [the] trustees," including Worbington. [91-4] at 1 (Merritt Incident Rep.). When Plaintiff "balled his fist up in an aggressive [manner] and started walking in [Elliott's] direction," Worbington "ran into the holding cell and hit [Plaintiff]." [79-1] at 45 (Elliott Incident Rep.). Merritt "pulled Worbington out of the cell," but Plaintiff "continued to kick the door and threaten bodily injury to [Elliott], . . . Merritt, and . . . Worbington." *Id*. At this point, Elliott "sprayed [him] . . . with OC spray." [91-4] at 1 (Merritt Incident Rep.). Crocker subsequently asked Plaintiff "if he wanted to sign charges on [Worbington] for simple assault," but "he advised [Crocker] that he did not." [79-1] at 40 (Crocker Incident Rep.).

Plaintiff saw Nurse Practitioner Charlene Hicks at the Perry County Jail on August 25,

2022. [79-1] at 48-53 (Medical Records). Plaintiff advised Hicks "that he was severely beaten by another inmate after arrest," which caused "severe ribcage pain." *Id*. at 48. When Hicks tried to review Plaintiff's medical history, which documents the prior use of illicit drugs, Plaintiff became "very agitated and . . . denie[d] any history of drug use." *Id*. at 51. Hicks could not perform a complete examination "due to [Plaintiff] not allowing palpation over [his] ribs," but she documented "bruising at [his] right ear, [an] abrasion at [his] right cheek, and [a] hematoma under [his] left eye." *Id*. Plaintiff was "instructed . . . to use cough and deep breathing exercise[s]," along with over-the-counter pain medication. *Id*. He was also advised to follow up with Hicks if he experienced "neurological changes" or "worsening of pain." *Id*. Hicks noted that she would "recommend [a] chest xray" if symptoms did not improve. *Id*.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The

movant accomplishes this by informing the court of the basis of for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

Moreover, Plaintiff is proceeding *in forma pauperis*, so his claims are also subject to screening and (if appropriate) *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Smith v. Anderson*, No. 2:11-cv-00221-KS-MTP, 2013 WL 1182995, at *1 (S.D. Miss. Feb. 13, 2013) (dismissing a case based on a motion for summary judgment and a "*sua sponte* . . . evaluation pursuant to 28 U.S.C. § 1915(e)(2)"), *report and recommendation adopted by* 2013 WL 1182984, at *1 (S.D. Miss. Mar. 21, 2013).

## IV. DISCUSSION

The undersigned has liberally construed Plaintiff's pleadings and testimony. *See Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002) ("[A] *pro se* plaintiff's pleadings are liberally construed."). Through this lens, Plaintiff alleges three constitutional violations: (1) excessive use of force during his arrest, (2) failure to protect him from violence by another inmate, and (3) delay or denial of medical care at the Perry County Jail. [79] at 1 (characterizing his own claims accordingly). Each claim is addressed in turn below, along with a separate discussion of Plaintiff's claims against Gardner.

To begin with, Plaintiff has sued all Defendants in their individual and official capacities. [56] at 5. "A suit against a public official [in] his official capacity is in effect a suit against the government entity he represents." *Long v. King*, No. 1:13-cv-00506-MTP, 2014 WL 5410324, at *4 (S.D. Miss. Oct. 22, 2014). To establish liability against a government entity like Perry County, Mississippi, "Plaintiff must prove that a policy, custom, or practice of that government entity was the 'moving force' behind the constitutional violation." *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). But Plaintiff has failed to allege and offer any proof of a policy or custom of Perry County that caused the alleged constitutional violations against him.

Thus, the undersigned recommends that all official-capacity claims be dismissed with prejudice for failure to make the requisite showing under *Monell*. *See Long*, 2014 WL 5410324, at *4 (dismissing official-capacity failure-to-protect claims under *Monell*). The following analysis is limited to Plaintiff's individual-capacity claims.

### A.  Excessive Force During Arrest

Defendants request judgment as a matter of law on Plaintiff's first claim for two reasons: (1) they "are . . . entitled to qualified immunity," [92] at 8; and (2) "Plaintiff's claim for excessive force . . . is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994)," [92] at 8. The undersigned agrees that Plaintiff's first claim is *Heck*-barred and does not opine on the qualified-immunity question at this point. *See Daigre v. City of Waveland*, No. 1:10-cv-00568-LG-RHW, 2012 WL 12885098, at *9 (S.D. Miss. Sept. 25, 2012) ("Because the Court finds that Daigre's Section 1983 claims are

barred by the *Heck* doctrine, there is no need to address the question of qualified immunity."), *aff'd*, 549 F. App'x 283, 286 (5th Cir. 2013).

"In *Heck*, the Supreme Court held that if a plaintiff's civil rights claim for damages challenges the validity of his criminal conviction or sentence, and the plaintiff cannot show that such conviction or sentence has been reversed, invalidated, or otherwise set aside, the claim is not cognizable under § 1983." *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019). "*Heck* requires the district court to consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006) (quotation omitted). "This requirement or limitation has become known as the favorable termination rule." *Id*. (quotation omitted).

Following his arrest on August 22, 2022, Plaintiff was charged with and pled guilty to resisting arrest, disorderly conduct, and simple assault. [91-3] at 1-3 (Justice Court Records). "[S]everal decisions by the Fifth Circuit indicate that *Heck*'s favorable termination rule generally bars excessive force claims where the plaintiff has been convicted of resisting arrest." *Bolton v. City of Gulfport ex rel. Schloegel*, No. 1:10-cv-00297-HSO-JMR, 2012 WL 6094770, at *11 (S.D. Miss. Dec. 7, 2012). Yet "there are limited circumstances where a plaintiff's prior conviction for resisting arrest is not inconsistent with a claim that a police officer used an unreasonable amount of force." *Id*. "The *Heck* analysis for excessive force claims recognizes that a broad application of *Heck* in the context of resisting arrest convictions could have the dangerous effect of implying that once a person begins to resist arrest, the police may use any amount of force on [him] and avoid civil consequences." *Id*. (quotation omitted).

"The determination of whether an excessive force claim is barred is analytical and fact-intensive." *Id.* (quotation and ellipsis omitted). The Court must determine "whether success on the excessive force claim . . . [negates] an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). "The civil claim should not be barred if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim." *Coleman v. Arnold*, No. 2:14-cv-00135-MTP, 2015 WL 6442319, at *2 (S.D. Miss. Oct. 23, 2015) (quotation omitted). "Accordingly, a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance." *Bush*, 513 F.3d at 498.

"There seems to be universal agreement that a plaintiff who concedes that he resisted arrest but nevertheless contends that excessive force was used against him would not find his Fourth Amendment claim barred by *Heck*." *Jackson v. City of Waveland*, No. 1:13-cv-00454-LG-RHW, 2015 WL 5577022, at *4 (S.D. Miss. Sept. 22, 2015) (quotation and ellipsis omitted). But "Plaintiff's version of the facts is that he did nothing wrong and [did] nothing to provoke the force that was used," a "version . . . wholly at odds with the facts established by his conviction for resisting arrest." *See Easterling v. Logazina*, No. 3:08-cv-00523-DPJ-FKB, 2011 WL 213472, at *1 (S.D. Miss. Jan. 21, 2011). In other words, Plaintiff's "claims are not that the police used excessive force after he stopped resisting arrest or even that officers used excessive and unreasonable force to stop his resistance." *See Arnold v. Town of Slaughter*, 100 F. App'x 321, 324 (5th Cir. 2004). "Instead, [Plaintiff] claims that he did nothing wrong, but was viciously attacked for no reason," and "[h]e provides no alternative pleading or theory of recovery." *See id.*;

*see also DeLeon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007) (holding *Heck*-barred a plaintiff's excessive-force claim because complaint described a single violent encounter in which the plaintiff claimed he was an innocent participant). "If [Plaintiff] truly did nothing wrong at the scene of the arrest, then it would necessarily imply the invalidity of his conviction for resisting arrest under Mississippi Code Section 97-9-73, which makes it 'unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest . . . by any state, local or federal law enforcement officer.'" *See Easterling*, 2011 WL 213472, at *1 (quoting MISS. CODE ANN. § 97-9-73).

"If the version of the events set forth in [Plaintiff's] complaint were proved correct, [his] conviction of resisting arrest cannot stand." *See Daigre*, 2012 WL 12885098, at *8. Thus, Plaintiff's first excessive-force claim "can only be read as an attack on the validity of [his] conviction for resisting arrest." *Walter v. Horseshoe Ent.*, 483 F. App'x 884, 887 (5th Cir. 2012). And Plaintiff has not shown that his conviction for resisting arrest has been reversed, expunged, declared invalid, or otherwise set aside. The undersigned is of the opinion that Plaintiff's excessive-force claims arising from his arrest on August 22, 2022, are barred by *Heck. See, e.g.*, *Carter v. Amador*, No. 1:22-cv-00031-RPM, 2024 WL 3904773, at *2 (S.D. Miss. Aug. 22, 2024) (holding *Heck*-barred an excessive-force claim that "would undermine the factual basis for [the plaintiff's] convictions and thereby negate the basis for those convictions"); *Ducksworth v. Rook*, No. 2:14-cv-00146-KS-MTP, 2015 WL 3796065, at *7 (S.D. Miss. June 18, 2015) (collecting Fifth Circuit cases holding "that a plaintiff's allegation of an unprovoked attack by law enforcement officers directly challenged the validity of his subsequent arrest"), *aff'd*, 647 F. App'x 383, 386-87 (5th Cir. 2016). This claim should be dismissed with prejudice to it "being asserted

again until the *Heck* conditions are met." *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

### B. Failure to Protect

Defendants argue that they are entitled to qualified immunity on Plaintiff's claim that they failed to protect him from Worbington's assault. [92] at 12. The undersigned is of the opinion that Crocker is entitled to qualified immunity on this claim, but that Nobles, Merritt, and Elliott are not. Any failure-to-protect claim against Crocker in his individual capacity should be dismissed with prejudice, but Plaintiff's failure-to-protect claim against Nobles, Merritt, and Elliott should proceed.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. (quotation omitted). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"[E]valuating qualified immunity is a two-step process." *Wyatt v. Fletcher*, 718 F.3d 496, 502-03 (5th Cir. 2013). The first step is to "determine whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right," and "the second step is to determine whether the defendant's conduct was objectively reasonable." *Id*. "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the

constitutional standard in light of the information available to him and the clearly established law." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). "[I]t is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first." *Skinner v. Hinds Cnty., Miss.*, No. 3:10-cv-00358-DPJ-FKB, 2012 WL 3913092, at *3 (S.D. Miss. Sept. 7, 2012). "Under either prong, [the Court] may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 473-74 (5th Cir. 2019) (quotation and first brackets omitted).

"Once an official pleads the defense of qualified immunity, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated a clearly established law." *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015) (quotations and alterations omitted). "To defeat qualified immunity, a plaintiff must demonstrate that it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Shumpert v. City of Tupelo*, 905 F.3d 310, 321 (5th Cir. 2018) (quotation omitted; emphasis in original).

Plaintiff has failed to allege that Crocker violated his constitutional rights as it relates to Worbington's assault against him. In each retelling of this event, Crocker is not mentioned as present or participating, and Plaintiff testified that Crocker "wasn't involved" in this situation. [91-2] at 36. Since Plaintiff has alleged no constitutional violation against Crocker for failure to protect, "there is no necessity for further inquiries concerning qualified immunity." *See Kinney v. Sollie*, No. 4:09-cv-00089-LRA, 2011 WL 3584310, at *3 (S.D. Miss. Aug. 9, 2011) (quotation omitted). The undersigned recommends that any failure-to-protect claim against Crocker be dismissed with prejudice pursuant to qualified immunity.

But Plaintiff has alleged the violation of a clearly established constitutional right against Nobles, Merritt, and Elliott. *See Skinner*, 2012 WL 3913092, at *5 ("Defendants had a duty to protect [Plaintiff] due to his status as a pre-trial detainee."); *see also Acker v. Grenada Cnty.*, No. 3:95-cv-067-S-A, 1996 WL 407985, at *3 (N.D. Miss. May 21, 1996) ("Certainly, there was a clearly established constitutional right to be safe from assaults from other inmates in June of 1994."). "So, at the summary-judgment stage, [Plaintiff] need only show a genuine dispute of material fact as to whether he has a failure-to-protect claim." *Bryant v. Cooley*, No. 2:21-cv-00051-BWR, 2023 WL 4423598, at *4 (S.D. Miss. July 10, 2023).

"To survive [Defendants'] . . . qualified immunity defense on the failure-to-protect claim, [Plaintiff] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Skinner*, 2012 WL 3913092, at *5 (quotation omitted). "To act with deliberate indifference, . . . [D]efendants must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference." *Id.* (quotation and brackets omitted). "In other words, [Plaintiff] must show that [Defendants] . . . disregarded a risk of harm that was actually known to them." *Id.*

The record evidence creates a genuine dispute of material fact about whether Nobles, Merritt, and Elliott were deliberately indifferent to Plaintiff's need for protection. Defendants insist that Plaintiff was combative after he was booked at the Perry County Jail—kicking the holding cell door and "cursing" at Elliott and Worbington, a nearby inmate trustee. [79-1] at 45 (Elliott Incident Rep.); [91-4] at 1 (Merritt Incident Rep.). They claim that Plaintiff made threatening gestures toward Elliott, including "ball[ing] his fist up in an aggressive [manner]," so Worbington

"ran into the holding cell and hit [Plaintiff]." [79-1] at 45 (Elliott Incident Rep.). Under this version of events, Nobles, Merritt, and Elliott had no prior knowledge of Worbington's intent to assault Plaintiff. But Plaintiff tells a different story. He claims that Merritt and Elliott "bribed" Worbington to assault him, [13] at 3, and he testified that "[t]hey did not even try to break . . . up" the fight, [91-2] at 26. In Plaintiff's words, they "stood right there and condoned it." *Id*. And Plaintiff testified that Nobles was "about 10 yards" away from his cell at the time (or shortly after) these events unfolded. *Id*. at 21-22. His testimony suggests that Nobles also had prior knowledge and condoned the assault against him. *See id*.

Plaintiff's sworn testimony at the Omnibus Hearing is "competent summary judgment evidence." *See Evans v. Mississippi*, No. 2:11-cv-00002, 2012 WL 4480731, at *4 n.3 (S.D. Miss. Sept. 26, 2012). If Nobles, Merritt, and Elliott "intentionally left this pre-trial detainee in a cell long enough to suffer abuse, then their acts would not be objectively reasonable." *See Skinner*, 2012 WL 3913092, at *6. Viewing the facts in the light required by Rule 56, the undersigned concludes that Nobles, Merritt, and Elliott are not entitled to qualified immunity on Plaintiff's failure-to protect claim. *See id.* (drawing the same conclusion based on similar facts); *see also, e.g.*, *Smith v. Dunbar*, No. 6:22-cv-442, 2024 WL 1228986, at *5-6 (E.D. Tex. Feb. 27, 2024), *report and recommendation adopted by* 2024 WL 1221182, at *1-2 (E.D. Tex. Mar. 21, 2024) (denying qualified immunity to prison guard for failure to protect based on allegations that she failed to intervene to stop one inmate from attacking another). The undersigned does not resolve the ultimate question of whether Nobles, Merritt, and Elliott violated Plaintiff's constitutional right to be safe from assault by another inmate. That question should be resolved by the factfinder at trial.

### C.  Delay or Denial of Medical Care

Plaintiff generally claims that he was denied medical care at the Perry County Jail in two ways: (1) being left too long in a cell contaminated by mace[3] and (2) being refused treatment for the injuries he suffered during his arrest and after Worbington's assault. Defendants did not brief these issues in their Motion [91] for Summary Judgment, but the undersigned has conducted an independent review under § 1915. Having considered the record and relevant legal authority, the undersigned concludes that Plaintiff's medical-care claims should be dismissed with prejudice.

"A government official violates a pretrial detainee's Fourteenth Amendment right to medical care when the official acts with deliberate indifference to the detainee's serious medical needs." *Deroche v. Hancock Cnty.*, No. 1:18-cv-00215-LG-RPM, 2021 WL 2556598, at *5 (S.D. Miss. June 22, 2021). "To meet the extremely high standard for proving deliberate indifference, [Plaintiff] must show that the officers were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that the officers actually drew the inference, and that the officers disregarded that risk by failing to take reasonable measures to abate it." *See id*. (quotation omitted).

"Deliberate indifference cannot be inferred from negligent, or even grossly negligent, acts or omissions of a defendant; mere negligence, neglect, unsuccessful medical treatment or even medical malpractice do not give rise to a § 1983 cause of action." *Toomer v. Coulter*, No. 1:18-cv-00312-RHW, 2020 WL 1286215, at *3 (S.D. Miss. Mar. 18, 2020). "A prisoner claiming

---

[3] Plaintiff alleges that Elliott sprayed him with mace and that he was not allowed to decontaminate for at least two hours. [11-2] at 1; [56] at 3; [91-2] at 31. Plaintiff does not appear to mount an excessive-force claim about Elliott's use of mace. He does not explain why he was maced, nor does he claim that the use of mace was unjustified. Thus, the undersigned construes these allegations as a complaint about Plaintiff's treatment *after* the mace was deployed.

deliberate indifference to serious medical needs must submit evidence that Defendant 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (quoting *Davidson v. Tex. Dep't of Crim. Justice*, 91 F. App'x 963, 965 (5th Cir. 2004)). "The determinative issue is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with deliberate indifference." *Id.* (quotation, alterations, and emphasis omitted).

"Deliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment." *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009). That is, "the existence of continuous medical care often precludes a finding of deliberate indifference." *Collins v. Caskey*, No. 4:07-cv-00058-HTW-LRA, 2009 WL 2368578, at *3 (S.D. Miss. July 29, 2009). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). "A delay in medical care violates the Constitution if there has been deliberate indifference that results in substantial harm." *Eugene v. Deville*, 791 F. App'x 484, 485 (5th Cir. 2020) (quotation and alteration omitted).

The record evidence shows that Defendants did not treat Plaintiff's medical needs with deliberate indifference during his time at the Perry County Jail. As for the mace incident, Plaintiff testified that he could not "say exactly how long" it took for his custodians to allow him to decontaminate, [91-2] at 31, but he knows that it took "more tha[n] . . . two hours," [11-2] at 1. At that point, Defendants took Plaintiff outside to "[spray him] down" with the water hose. [91-2] at

17

31-32. Plaintiff testified that, "[w]ater makes it worse, but I guess it helps, too, at the same time maybe." *Id*. at 32. Plaintiff was then returned to his cell. *Id*.

Plaintiff has failed to establish that he required medical treatment after the macing incident. There is no evidence that he requested medical treatment for decontamination purposes, nor does he allege any injury as a result. *See Gadison v. Jackson*, 4:03-cv-281-P-A, 2006 WL 1233057, at *4 (N.D. Miss. May 5, 2006) (dismissing medical-care claim when the plaintiff failed to establish "that he required medical treatment" after being sprayed with mace).

Assuming some treatment was required, decontamination from contact with mace "consists primarily of flushing the eyes with water," which "can be done . . . at the jail." *See Wagner v. Bay City, Tex.*, 227 F.3d 316, 319 n.1 (5th Cir. 2000). Because Plaintiff was "spray[ed] in the face with the water [hose]" shortly after the macing incident, [91-2] at 31-32, he has failed to establish that Defendants were deliberately indifferent to a substantial risk of serious harm from the mace. *See, e.g.*, *Smith v. Caldwell Par. Det. Ctr.*, No. 23-0198, 2023 WL 4247131, at *7 (W.D. La. June 9, 2023) (recommending dismissal of similar claims where the plaintiff "was allowed to shower for two minutes" after the macing incident), *report and recommendation adopted by* 2023 WL 4243317, at *1 (W.D. La. June 28, 2023); *Hamilton v. Orr*, No. 21-199-JWD-SDJ, 2023 WL 2878820, at *4 (M.D. La. Mar. 22, 2023) (recommending dismissal of similar claims where "there was an approximate nine-hour delay between when [the plaintiff] was sprayed with chemical agent and when he was allowed to shower"), *report and recommendation adopted by* 2023 WL 2868008, at *1 (M.D. La. Apr. 10, 2023). "Courts have previously held that refusing to allow an inmate to shower after exposure to chemical spray does not rise to the level of deliberate indifference," so "this claim fails as a matter of law." *See id*. (collecting cases).

18

Nor has Plaintiff shown that Defendants acted with deliberate indifference in treating his injuries from the arrest and Worbington's assault. The undisputed evidence shows that Plaintiff was treated by a nurse practitioner at the Perry County Jail three days after he arrived. She tried to perform a complete examination, but Plaintiff limited her efforts by "not allowing palpation over [his] ribs." [79-1] at 51. Nonetheless, the nurse practitioner documented bruising, an abrasion, and a hematoma, all on Plaintiff's face, and she instructed him to use over-the-counter pain medication and deep-breathing exercises to cope with pain. *Id.* Plaintiff was advised to follow up with the nurse practitioner if he suffered "neurological changes" or "worsening of pain," and she committed to "recommend[ing] [a] chest xray" if symptoms did not improve. *Id.* Plaintiff was transferred to FCADC before additional care at Perry County Jail became necessary.

The medical treatment that Plaintiff received at the Perry County Jail "may not have been the best that money could buy," *see Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992), but the evidence before the Court shows that his complaints were not refused, ignored, or intentionally handled incorrectly. The undersigned thus recommends that Plaintiff's medical-care claims be dismissed with prejudice.

### D. Claims Against Gardner

Plaintiff originally sued Gardner for the conduct now attributed to Elliott, who was added as a Defendant after the Complaint was filed. When Gardner failed to waive service of process, the Court issued summons to his attention at the Perry County Jail on December 15, 2022. [26] at 1-2. The summons return indicates that Gardner "is deceased." [28] at 1. At the Omnibus Hearing, counsel for Defendants advised the Court that Gardner, who was formerly employed by the Perry County Sheriff's Department, is in fact deceased. [91-2] at 57. No suggestion of death has been

filed.

But Plaintiff later came to realize that he was "not even sure that the individual [he] meant to sue is actually named Jerry Gardner." *See id*. at 60. He sued Jerry Gardner because his "girlfriend called Perry County Jail to get Mr. Jerry's last name," and "that was the last name they gave [her]." *Id.* Thus, the Court gave Plaintiff a chance to amend the pleadings. *See Ballard v. Tex.*, No. 02-50201, at 2002 WL 31049454, at *1 (5th Cir. Aug. 30, 2002) ("[A] *pro se* plaintiff who has named the wrong defendant should be permitted to amend his pleadings when it is clear from his complaint that there is a potential ground for relief."). Plaintiff later advised the Court that Jerry Gardner is actually Jerry Elliott. [53] at 1; [56] at 2-3. Because Gardner was named as Defendant by mistake, and Plaintiff's allegations do not implicate him, Plaintiff's claims against Gardner should be dismissed.

## V. RECOMMENDATION

The undersigned recommends that the Motion [91] for Summary Judgment filed by Defendants Sheriff Mitch Nobles, Danny Merritt, Allen Crocker, and Jerry Elliott be granted in part and denied in part. Plaintiff's official-capacity claims against all Defendants, his excessive-force claims against all Defendants, his failure-to-protect claim against Crocker, and his medical-care claims against all Defendants should be dismissed with prejudice. Plaintiff's claims against Jerry Gardner should be dismissed with prejudice too. Crocker and Gardner should be terminated as Defendants on the Court's docket.

Plaintiff's failure-to-protect claims against Nobles, Merritt, and Elliott in their individual capacities should be allowed to proceed, along with any claims against Defendant Adam Lawrence Worbington.

## VI. NOTICE OF RIGHT TO APPEAL/OBJECT

Within fourteen days of being served with a copy of this Report and Recommendation, any party may serve and file written objections with the Clerk of Court. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within seven days of service of the objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objections. L.U.CIV. R. 72(a)(3).

The District Judge shall make a de novo determination of those portions of the Report and Recommendation to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive more evidence or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge will be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *See Wallace v. Miss.*, 43 F.4th 482, 494-95 (5th Cir. 2022) (collecting cases).

**SIGNED,** this 3rd day of February, 2025.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE

21